UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 9:21-cr-80026-AMC

UNITED STATES OF AMERICA

vs.

ALIREZA HENDIJANI,

    Defendant.
_____/

## PLEA AGREEMENT

The United States Attorney's Office for the Southern District of Florida ("this Office") and ALIREZA HENDIJANI (hereinafter referred to as the "defendant") enter into the following agreement:

1. The defendant agrees to plead guilty to Count One of the Indictment, which charges him with Conspiracy to Possess with Intent to Distribute, and Distribute, 400 Grams or more of Fentanyl and 1 Kilogram or more of Heroin, in violation of Title 21, United States Code, Sections 846, 841(a), and (b)(1)(A). This Office agrees to seek dismissal of the remaining counts of the Indictment after sentencing.

2. The defendant is aware that the sentence will be imposed by the Court after considering the advisory Federal Sentencing Guidelines and Policy Statements (hereinafter "Sentencing Guidelines"). The defendant acknowledges and understands that the Court will compute an advisory sentence under the Sentencing Guidelines and that the applicable guidelines will be determined by the Court relying in part on the results of a pre-sentence

1

investigation by the Court's probation office, which investigation will commence after the guilty plea has been entered.  The defendant is also aware that, under certain circumstances, the Court may depart from the advisory sentencing guideline range that it has computed, and may raise or lower that advisory sentence under the Sentencing Guidelines.  The defendant is further aware and understands that the Court is required to consider the advisory guideline range determined under the Sentencing Guidelines, but is not bound to impose a sentence within that advisory range; the Court is permitted to tailor the ultimate sentence in light of other statutory concerns, and such sentence may be either more severe or less severe than the Sentencing Guidelines' advisory range. Knowing these facts, the defendant understands and acknowledges that the Court has the authority to impose any sentence within and up to the statutory maximum authorized by law for the offense identified in paragraph 1 and that the defendant may not withdraw the plea solely as a result of the sentence imposed.

3. As to Count 1, the Court may impose a term of imprisonment of up to life, and must impose a term of imprisonment of at least ten (10) years, followed by a term of supervised release of at least five (5) years and up to life.  In in addition to a term of imprisonment and supervised release, the Court may impose a fine of up to $10,000,000.00.

4. The defendant further understands and acknowledges that, in addition to any sentence imposed under paragraph 3 of this agreement, a special assessment in the amount of $100.00 will be imposed on the defendant.  The defendant agrees that any special assessment imposed shall be paid at the time of sentencing.  If the defendant is financially unable to pay

the special assessment, the defendant agrees to present evidence to this Office and the Court at the time of sentencing as to the reasons for the defendant's failure to pay.

5. This Office reserves the right to inform the Court and the probation office of all facts pertinent to the sentencing process, including all relevant information concerning the offenses committed, whether charged or not, as well as concerning the defendant and the defendant's background. Subject only to the express terms of any agreed-upon sentencing recommendations contained in this agreement, this Office further reserves the right to make any recommendation as to the quality and quantity of punishment.

6. The Office agrees that it will recommend at sentencing that the Court reduce by two levels the sentencing guideline level applicable to the defendant's offense, pursuant to Section 3E1.1 of the Sentencing Guidelines, based upon the defendant's recognition and affirmative and timely acceptance of personal responsibility. If at the time of sentencing the defendant's offense level is determined to be 16 or greater, the government will file a motion requesting an additional one level decrease pursuant to Section 3E1.1(b) of the Sentencing Guidelines, stating that the defendant has assisted authorities in the investigation or prosecution of the defendant's own misconduct by timely notifying authorities of the defendant's intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the Court to allocate their resources efficiently. However, the Office will not be required to make these sentencing recommendations if the defendant: (1) fails or refuses to make full, accurate and complete disclosure to the probation office of the circumstances surrounding the relevant offense

3

conduct; (2) is found to have misrepresented facts to the Office prior to entering this Agreement; or (3) commits any misconduct after entering into this Agreement, including but not limited to committing a state or federal offense, violating any term of release, or making false statements or misrepresentations to any governmental entity or official.

7. The defendant and this Office agree that, although not binding on the probation office or the Court, they will jointly recommend that the Court make the following findings and conclusions as to the sentence to be imposed:

(a) Under Section 2D1.1(c)(3) of the Guidelines, the weight of the fentanyl and heroin for which the defendant is accountable under all relevant conduct results in a Base Offense Level of 36;

(b) If the elements of paragraph 6 are satisfied (acceptance of responsibility), the offense level would decrease by three levels;

(c) The resulting Total Offense Level would be 33;

(d) There are no further applicable adjustments or departures under the Guidelines;

(e) The parties jointly recommend that the sentence in this case run concurrent to the sentences imposed in the supervised release violations in case numbers 9:19-TP-80014-DMM and 9:02-CR-80054-DMM-2; and

(f) The parties jointly recommend a sentence of 210 months' imprisonment.

8. The defendant is aware that Title 18, United States Code, Section 3742 and Title 28, United States Code, Section 1291 afford the defendant the right to appeal the sentence imposed in this case. Acknowledging this, in exchange for the undertakings made by the United States in this plea agreement, the defendant hereby waives all rights conferred by

Sections 3742 and 1291 to appeal any sentence imposed, including any restitution order, or to appeal the manner in which the sentence was imposed, unless the sentence exceeds the maximum permitted by statute or is the result of an upward departure and/or an upward variance from the advisory guideline range that the Court establishes at sentencing. The defendant further understands that nothing in this agreement shall affect the government's right and/or duty to appeal as set forth in Title 18, United States Code, Section 3742(b) and Title 28, United States Code, Section 1291. However, if the United States appeals the defendant's sentence pursuant to Sections 3742(b) and 1291, the defendant shall be released from the above waiver of appellate rights. By signing this agreement, the defendant acknowledges that the defendant has discussed the appeal waiver set forth in this agreement with the defendant's attorney. The defendant further agrees, together with the United States, to request that the Court enter a specific finding that the defendant's waiver of the defendant's right to appeal the sentence to be imposed in this case was knowing and voluntary.

9. The defendant is aware that the sentence has not yet been determined by the Court. The defendant also is aware that any estimate of the probable sentencing range or sentence that the defendant may receive, whether that estimate comes from the defendant's attorney, the government, or the probation office, is a prediction, not a promise, and is not binding on the government, the probation office or the Court. The defendant understands and acknowledges, as previously acknowledged in paragraph 2 above, that the defendant may not withdraw his plea based upon the Court's decision not to accept a sentencing recommendation made by the defendant, the government, or a recommendation made jointly by both the defendant and the government.

10. This is the entire agreement and understanding between this Office and the defendant. There are no other agreements, promises, representations, or understandings.

JUAN ANTONIO GONZALEZ
ACTING UNITED STATES ATTORNEY

Date: 6/4/21     By: *Marton Gyires*
MARTON GYIRES
ASSISTANT UNITED STATES ATTORNEY

Date: 5/27/21
GREY TESH
ATTORNEY FOR DEFENDANT

Date: 5/27/21     *W for Ali Hendijani*
ALIREZA HENDIJANI
DEFENDANT

6

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 9:21-cr-80026-AMC

UNITED STATES OF AMERICA

vs.

ALIREZA HENDIJANI,

        **Defendant.**
_____/

## STIPULATION OF FACTS AND ACKNOWLEDGMENT OF OFFENSE ELEMENTS IN SUPPORT OF GUILTY PLEA

The United States of America, by and through its undersigned Assistant United States Attorney, and ALIREZA HENDIJANI, (hereinafter referred to as the "Defendant" or "HENDIJANI"), together with his counsel, admit that the government can prove the allegations contained in Count One of the Indictment, Conspiracy to Possess with Intent to Distribute, and Distribute, 400 Grams or more of Fentanyl and 1 Kilogram or more of Heroin, in violation of Title 21, United States Code, Sections 846, 841(a), and (b)(1)(A). The Defendant also stipulates that those allegations and the following recitation of the facts shall constitute the underlying factual basis. These facts are offered for the limited purpose of the guilty plea and consequently does not contain all of the facts known to the government in this case:

    During the dates alleged in the Indictment, HENDIJANI was involved in the distribution of heroin and fentanyl in the Southern District of Florida. HENDIJANI was responsible for relaying customer orders, obtained by co-conspirators such as Tyler Roman, Emilio Santiago, and Joshua Grauer, for orders of heroin, fentanyl, or a mix of the two, to a source of supply. After obtaining customers, the co-conspirators would provide HENDIJANI with mailing addresses to where the drugs could be mailed. These addresses were relayed to co-conspirators in California such as Diego Navarro and Jose Esquer. The drugs would then be mailed, and co-conspirators would retrieve the packages in the Southern District of Florida. After retrieving the packages, the co-conspirators would deliver the drugs to the customers and used various methods of receiving payment. Proceeds were distributed among HENDIJANI, Roman, Grauer, Santiago, and others. HENDIJANI would often ask

the co-conspirators to record themselves via photograph or video when they would open the packages containing drugs in order to document the occasion and drug amounts.

On or about June 19, 2020, Tyler Roman, who was cooperating with law enforcement at the time, and HENDIJANI met at a Dunkin' Donuts in West Palm Beach, Florida. This meeting was surveilled by law enforcement and audio and video recorded. After being inside the store, the two sat inside Roman's vehicle and had a conversation during which HENDIJANI discussed, among other things, parcels that were seized by law enforcement (unbeknownst to HENDIJANI). This conversation was recorded and live-monitored by agents on surveillance. HENDIJANI explained to Roman that co-conspirators in California had stopped shipping packages for HENDIJANI to handle because of numerous recent packages that did not successfully make it through the mail system. HENDIJANI explained to Roman that HENDIJANI would have to come up with money to make up for the lost packages in order to start working with his sources of supply again.

In and around August and September 2020, Roman, at the direction of law enforcement officers, engaged in multiple discussions with HENDIJANI, often times using cellular telephones, regarding the purchase of a kilogram of fentanyl. Roman told HENDIJANI that he knew a person who would like to purchase a kilogram of fentanyl (in reality the buyer was law enforcement). Roman and HENDIJANI agreed that a USPS parcel would be shipped through the mail and their conversations covered multiple other details including mailing, address, price, possible delays, and other matters.

On or about September 13, 2020, HENDIJANI contacted Roman to confirm a safe mailing address to where the package could be sent. On that date, with the consent and direction of agents, Roman provided HENDIJANI a specific address in Port St. Lucie, Florida. On or about September 17, 2020, HENDIJANI confirmed with Roman that the deal was in motion. On or about September 21, 2020, HENDIJANI sent a text message to Roman that contained the unique tracking number of the drug parcel.

On or about September 21, 2020, a Postal Inspector in California, following consultation with Postal Inspectors in West Palm Beach, Florida, conducted postal database checks and identified the parcel. The parcel was forwarded to federal law enforcement in West Palm Beach, Florida and opened pursuant to a federal search warrant on or about September 22, 2020. Inside the parcel, agents found approximately one kilogram of a compressed white substance that field-tested positive for fentanyl. This substance was pressed with a symbol that looks like the one used by the automobile company Audi.

Roman made further communications with HENDIJANI regarding the receipt of the package. In the afternoon of September 23, 2020, while being monitored by agents, Roman met with HENDIJANI and gave HENDIJANI approximately $42,000.00 as a partial payment for the kilogram of fentanyl. The money was provided by law enforcement. During this meeting, HENDIJANI and Roman agreed to have Roman deliver the remaining $7,000 owed on September 25, 2020.

On or about September 25, 2020, Roman again met HENDIJANI and delivered the remaining $7,000 (also provided by law enforcement). HENDIJANI told Roman that he would be keeping $1,000 of it, and giving the remainder to "them," which Roman understood to mean co-conspirators.

I am aware of and understand the nature of the charges to which I am pleading guilty, because I have discussed the charges and what the prosecutor must prove to convict me with my attorney. I understand that the United States must prove the following facts (or "elements") of the offenses beyond a reasonable doubt:

Count 1: Title 21, United States Code, Section 846:

(1) two or more people in some way agreed to try to accomplish a shared and unlawful plan;

(2) the Defendant, knew the unlawful purpose of the plan and willfully joined in it; and

(3) the object of the unlawful plan was to possess with the intent to distribute or distribute 400 Grams or more of Fentanyl or 1 Kilogram or more of Heroin.

JUAN ANTONIO GONZALEZ
ACTING UNITED STATES ATTORNEY

Date: 6/4/21     By: _Marton Gyires_
                     MARTON GYIRES
                     ASSISTANT UNITED STATES ATTORNEY

Date: 5/27/21    _____
                  GREY TESH
                  ATTORNEY FOR DEFENDANT

Date: 5/27/21    _for Mr. Hendijani_____
                  ALIREZA HENDIJANI
                  DEFENDANT

3